UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:19-cv-00142-FDW

| | |
|---|---|
| CHRISTY LEIGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Plaintiff Christy Leigh's Motion for Summary Judgment (Doc. No. 14), filed October 7, 2019, and Defendant Commissioner of Social Security Andrew Saul's Motion for Summary Judgment (Doc. No. 16), filed December 3, 2019. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Supplemental Social Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED; the Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED; and the Commissioner's decision is AFFIRMED.

I. BACKGROUND

Plaintiff applied for Title XVI benefits on October 8, 2015 alleging disability beginning that date. (Tr. 11). The claim was denied initially on August 31, 2016 and upon reconsideration on May 17, 2017. Id. Thereafter, the claimant filed a written request for hearing before Administrative Law Judge ("ALJ") on August 23, 2017. Id. On March 21, 2018, an ALJ conducted a video hearing regarding Plaintiff's application. Id. After the hearing, the ALJ denied

1

Plaintiff's application in a written decision dated April 27, 2018.  Id.  Plaintiff requested review of the ALJ's decision before the Appeals Council, which was ultimately denied.  Id. at 1.

In reaching his decision, the ALJ used the five-step sequential evaluation process for the evaluation of claims for disability under the Social Security Act (the "Act"). 20 C.F.R. § 416.920(a).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 8, 2015, the date she applied for SSI.  (Tr. 13).  At step two of the analysis, the ALJ found Plaintiff to have the following severe impairments: "affective disorder, anxiety disorder, substance abuse disorder, and disorders of the female genital organs[.]"  Id.  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter "The Listings").  20 C.F.R. §§ 416.920(d), 416.925, 416.926; (Tr. 14).

Before turning to step four, ALJ determined Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b):

> [E]xcept she is limited to frequent handling and fingering with the left upper extremity; she is limited to simple, routine, repetitive work; and she should have no more than frequent contact with coworkers or supervisors, and no more than occasional contact with the public.

(Tr. 15).  At step four, the ALJ found that Plaintiff had no past relevant work.  Id. at 18.  Finally, at step five, the ALJ found that based on Plaintiff's age, education, work experience, RFC, and the vocational expert ("VE") testimony, that Plaintiff could perform occupations such as: inspector hand packager, electronic worker, and shipping and receiving weigher.  Id. at 18-19.  Furthermore, the ALJ specified that these jobs exist in significant numbers in the nation's economy.  Id.  As a result, the ALJ concluded Plaintiff was not disabled, as defined under the Act.  Id. at 20.  Plaintiff has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g). (Doc. No. 15, p. 7).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step

3

process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that

could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

Plaintiff asserts two assignments of error in the ALJ's disability decision: (1) the ALJ failed to identify and resolve the apparent conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert ("VE") testimony; and (2) the ALJ failed to properly account for all the limitations resulting from her mental impairments. (Doc. No. 15, p. 5).

**A. Vocational Expert Testimony**

As stated above, the ALJ found, in part, that Plaintiff is limited to "simple, routin[e], repetitive work; and that she should have no more than frequent contact with coworkers or supervisors, and no more than occasional contact with the public." (Tr. 15). When asked whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC, the VE identified the jobs of inspector hand packager, electronic worker,

5

and receiving weigher.  Id. at 19.  The ALJ determined the VE's testimony to be consistent with the DOT.  Id.

When the ALJ relies on the testimony of a VE in step five to determine disability, the ALJ has the responsibility to (1) inquire whether there are any conflicts between the VE's testimony and the DOT and (2) elicit a reasonable explanation for any apparent conflict from the VE.  Pearson v. Colvin, 810 F.3d 204, 208-210 (4th Cir. 2005); SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000).  A conflict is apparent if the "[VE's] testimony seems to, but does not necessarily, conflict with the [DOT]."  Pearson, 810 F.3d at 209.  "[I]f the ALJ does not elicit [an] explanation [for an apparent conflict], then the [VE's] testimony cannot provide substantial evidence to support the ALJ's decision."  Id.; see also Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016) ("[W]e held that a VE's testimony that apparently conflicts with the DOT can only provide substantial evidence if the ALJ received an explanation from the VE explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the VE's testimony rather than the DOT.").

In posing questions to the VE, Plaintiff contends the ALJ erred by failing to obtain a reasonable explanation for apparent conflicts with the VE's testimony and the DOT.  (Doc. No. 15, p. 10-11).  Plaintiff contends that Plaintiff's limitation to "simple, routine, repetitive tasks" appears to conflict with the reasoning level two and three of the jobs the ALJ relied on at step five and that the ALJ did not identify or resolve this apparent conflict.  (Doc. No. 15, p. 12).  However, Defendant contends there is no apparent conflict between Plaintiff's limitation and the reasoning level two jobs mentioned.  (Doc. No. 17, p. 5-6).  Furthermore, Defendant contends that since there is no conflict between the level two jobs mentioned, the potential conflict with the level three job

6

is irrelevant because there are enough positions available in the national economy with the level two jobs suggested.  Id.

### 1. Apparent Conflict: Reasoning Level Two

According to the DOT, the jobs as inspector hand packager (DOT 559.687-074) and electronic worker (DOT 726.687-010)[1] have a reasoning level of two.  Level two reasoning level, requires the ability to "'[a]pply commonsense understanding to carryout detailed but uninvolved written or oral instructions' and to '[d]eal with problems involving few concrete variables in or from standardized situations.'" DOT, App. C, 1991 WL 688702.  According to the ALJ, a job as an inspector hand packager offers 337,000 positions nationally and an electronic worker provides 41,000 positions nationally.  (Tr. 19).

The Fourth Circuit held recently that there is no apparent conflict between an RFC limitation to "simple, routine, repetitive tasks of unskilled work" and the definition of reasoning level two in the DOT.  Lawrence v. Saul, 941 F.3d 140 (4th Cir. 2019).  "To assess whether an apparent conflict exists," the court "compare[s] the DOT's 'express language' with the vocational expert's testimony."  Lawrence, 941 F.3d at 143 (quoting Pearson, 810 F.3d at 209).  While short functions are inconsistent with detailed ones, there is no comparable inconsistency between simple, routine, repetitive work functions and the definition of reasoning level two.  Id.

In addition, the Fourth Circuit has not established a minimum requirement for the number of positions that must be available to an individual, but generally speaking, it does not have to be a particularly large number. See Hicks v. Califano, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (stating that as few as 110 jobs in a region do not constitute an insignificant number of jobs).  Based on

---

[1] The ALJ lists "electronic worker" as DOT 726.687-018. (Tr. 19).  However, this appears to be a typographical error and should be cited as DOT 726.687-010.  See DOT 726.687-010.

7

Case 1:19-cv-00142-FDW   Document 19   Filed 07/01/20   Page 7 of 14

Lawrence, there is no conflict between Plaintiff's RFC limitation and level two reasoning. Furthermore, even if there is a conflict between the Plaintiff's limitation to "simple, routine, repetitive tasks" and the one level three reasoning job suggested by the VE, the level two jobs suggested by the VE provide 378,000 positions nationally. Thus, there is a substantial number of positions available that are suitable for Plaintiff's limitations. Plaintiff's assignment of error is overruled.

### 2. Apparent Conflict: Reasoning Level Three

As discussed above, Plaintiff contends that one of the VE's prescribed jobs, namely, "shipping and receiving weigher" (DOT 222.387-074) requires a level three reasoning ability and thus conflicts with her limitation to "simple, routine, repetitive work." (Doc. No. 15, p. 13). Defendant acknowledges the split in this district as to whether a conflict exists between Plaintiff's limitation and jobs requiring level three reasoning. (Doc. No. 17. P. 7). However, Defendant argues that even if there is a conflict, the presence of 378,000 suitable positions for Plaintiff's limitation sufficiently satisfy the Commissioner's burden at step five. Id.

Courts in this district have disagreed whether a restriction to simple, routine, and repetitive work conflicts with jobs that require level three reasoning. See Moore v. Saul, No. 1:19-CV-00073-KDB, 2020 WL 97455, at *3 (W.D.N.C. Jan. 8, 2020) (noting a split in W.D.N.C. courts on this issue). While some courts in this district have held that a conflict exists between level three reasoning and simple, routine, repetitive tasks, others have not. Compare Corvin v. Berryhill, No. 5:17-CV-92-RJC-DSC, 2018 WL 3738226, at *5 (W.D.N.C. Aug. 7, 2018) (agreeing with Plaintiff's objection that an apparent conflict exists between a level three reasoning ability and the ALJ's limitation to "simple, routine, repetitive task[s]") with Thacker v. Astrue, 3:11-CV-246-GCM-DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) ("There was no apparent conflict

between the ALJ's RFC limitation to simple, routine, repetitive, unskilled work and the reasoning level three jobs identified by the V.E."), adopted by 2012 WL 380052 (W.D.N.C. Feb. 6, 2012). However, even if the ALJ errs in failing to address a conflict with a level three reasoning job and Plaintiff's limitation to "simple, routine, repetitive tasks," this finding alone does not require a remand. See Moore, 2020 WL 97455, at *4 (explaining the plaintiff had a sufficient number of positions available that were suitable for his limitation regardless of the conflict between a recommended level three reasoning job).

Thus, the Court need not address the question of whether level three reasoning conflicts with Plaintiff's limitations. Plaintiff's remaining recommended level two reasoning jobs of inspector hand packager (337,000 jobs) and shipping and receiving weigher (80,000 jobs) both hold a significant number of jobs in the national economy and are suitable for her limitation. (Tr. 19).

### B. Plaintiff's RFC: Concentration, Persistence, or Pace

At step four, the ALJ found that Plaintiff had the RFC to "perform light work. . . except she is limited to frequent handling and fingering with the left upper extremity; she is limited to simple, routine, and repetitive work; and she should have no more than frequent contact with coworkers or supervisors, and no more than occasional contact with the public." (Tr. 15). Plaintiff contends that the ALJ did not account for her moderate limitation in concentrating, persistence, and maintaining pace in the RFC. (Doc. No. 15, p. 17). Plaintiff asserts that Mascio requires the ALJ to "adopt a limitation that addresses a claimant's ability to stay on task or explain why such a limitation is unnecessary," and such error is harmful. Id. at 16, 19. Defendant argues the issue addressed in Mascio was the ALJ's error in "'ignoring (*without explanation*) [the claimant's] moderate limitation in her ability to maintain her concentration, persistence, or pace.'" (Doc. No.

9

Case 1:19-cv-00142-FDW   Document 19   Filed 07/01/20   Page 9 of 14

17, p. 7) (alterations and emphasis in original) (quoting Mascio, 780 F.3d at 633). Defendant contends that even though the ALJ did not provide a limitation in concentrating, persistence, and maintaining pace, the ALJ properly explained why an additional off-task limitation was not supported by the record. Id. at 8.

In Mascio, the Fourth Circuit held that a hypothetical tendered to a VE was legally insufficient where the ALJ failed to explain why the plaintiff's moderate mental limitation in concentration, persistence, and pace did not translate into the RFC. 780 F.3d at 638. The court reasoned that an ALJ cannot sufficiently account for a claimant's limitation in concentration, persistence, and pace by simply limiting the hypothetical to simple or unskilled work. Id. at 638 (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). In other words, "Mascio held that the ability to perform simple work is not the same as having the ability to *stay on task* during a workday, which is the limitation that would account for a claimant's impairment in concentration, persistence or pace." Minor v. Berryhill, No. 9:17-1087-TMC-BM, 2018 WL 1305181, at *5 (D.S.C. Feb. 20, 2018) (emphasis in original). On the other hand, where an ALJ finds that the concentration, persistence, and pace limitation does not affect the claimant's ability to work, then exclusion of the limitation from the hypothetical tendered is appropriate. Mascio, 780 F.3d at 638; see also Winschel, 631 F.3d at 1180 ("But when medical evidence demonstrates that a claimant can engage in simple, routine, tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations."). The Mascio court remanded because the ALJ provided no explanation at all regarding whether the claimant's limitation affected her RFC. Mascio, 780 F.3d at 638.

10

More recently, the Fourth Circuit held that a limitation to "simple, routine, repetitive tasks" sufficiently accounted for a moderate limitation in concentration, persistence, and pace and borderline intellectual disability where the ALJ "issued a comprehensive decision denying [Plaintiff's] claim." Shinaberry v. Saul, 952 F.3d 113, 119 (4th Cir. 2020). The plaintiff argued that a limitation only to simple, routine, repetitive tasks violated Mascio, but the court disagreed. Id. at 121. The court reiterated that Mascio did not enact a per se rule, but instead allowed the ALJ to explain why a restriction greater than simple, routine, repetitive tasks was not warranted. Id. After discussing the plaintiff's mental limitations, which consisted primarily of explaining the rationale for giving great weight to the State Agency psychological experts' and consultative psychologist's opinions, the ALJ stated that the "simple, routine, repetitive tasks" restriction "accounted" for Plaintiff's limitations. Id. at 121-22. "In sum … the ALJ … addressed [Plaintiff's mental limitations] and explained why the psychological evidence and [Plaintiff's] statements support [only] a mental limitation to [simple, routine, repetitive tasks]." Id. at 122. Accordingly, the court affirmed the ALJ's hearing decision. Id. at 124.

In Shinaberry, the ALJ included a limitation to "simple, routine, repetitive tasks" not only to account for plaintiff's moderate limitation in concentration, persistence, and pace, but to also account for plaintiff's borderline intellectual disability. However, since the ALJ extensively explained the reasoning for doing so, the decision was affirmed. Here, while Plaintiff also has a moderate limitation in concentration, persistence, and pace, she does not have a borderline intellectual disability. Thus, if the ALJ in Shinaberry could limit the claimant, who additionally suffered from a borderline intellectual disability, to "simple, routine, repetitive tasks" after a thorough explanation, then the ALJ in the present case can provide the same limitation with an adequate explanation as well.

Unlike Mascio, the ALJ in the present case specifically accounted for Plaintiff's limitation in the posed hypothetical and adequately explained how the medical evidence demonstrated Plaintiff could engage in simple, routine, and repetitive work despite her limitations. Although the ALJ found moderate limitations in concentration, persistence, and pace, he also observed:

> The claimant is often presented with a depressed and/or anxious demeanor; however, she did not routinely exhibit memory problems, concentration deficits, or cognition problems. Mental status evaluation often revealed normal grooming and dress, appropriate affect, normal stream of thoughts, focused attention and concentration, good insight, unimpaired memory, and appropriate judgement. Nonetheless, the claimant experienced periods of exacerbation, typically due to situational stressors or noncompliance, during which she experienced moderate limitations in mental functioning as assessed above.

(Tr. 14-15). The ALJ noted that "[d]espite [Plaintiff's] exacerbations, the claimant was able to manage with conservative measures, and did not exhibit significant decompensation."[2] Id. at 16. The ALJ then referenced numerous exhibits in the record reflecting Plaintiff's mental function improvements over the past five years. Id. at 17. For example, the ALJ noted that in March 2016, Plaintiff was "pleasant and cooperative with intact associations, fair insight, unimpaired memory, and no perceptual disturbances or delusions." Id. Additionally, in May and September of 2017, the ALJ noted, in part, that Plaintiff applied for jobs, reported a better mood than usual, that her medications were working better than ever, had appropriate linear physiological functioning, and even though Plaintiff endorsed some symptoms of depression after the passing of her father, she exhibited normal mental functioning upon examination. Id. The ALJ concluded that the "claimant's medically determinable impairments could reasonably be expected to cause the alleged

---

[2] The ALJ refers to "exacerbations" in Plaintiff's memory, cognition, and concentration problems and suggests it stems from changing medication, noncompliance with treatment, substance abuse, or increased stressors such as the death of her father and grandson. However, as the ALJ explains, besides these moments of exacerbation, Plaintiff tends to exhibit more of a mild to moderate limitation in mental functioning as opposed to just moderate. (Tr. 16).

12

symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 16. Thus, after extensively analyzing Plaintiff's medical records, the ALJ explained, "there is no evidence to support that [Plaintiff] would have absenteeism and off-task behavior . . . ." Id. at 18.

Plaintiff argues that the ALJ's failure to provide an explanation for a limitation to "simple, routine, repetitive tasks" is a harmful error. (Doc. No. 15, p. 23). Specifically, Plaintiff draws attention to the VE's testimony in support of no work being available in the ALJ's third hypothetical. Id. When Plaintiff's attorney inquired about why there would be no work, the VE testified that "a lack of concentration that resulted in being off task ten percent of the time or more would preclude all work." (Tr. 179). However, the VE's response was based on the claimant's testimony of being off-task ten percent of the time, not evidence in the medical records. Id. at 178-79. As discussed above, the ALJ discusses why he gives less weight to the claimant's testimony due to its inconsistencies with the medical evidence. Id. at 16. Furthermore, none of the jobs indicated by the VE that were based on the ALJ's third hypothetical were suggested for the Plaintiff. See id. at 19. Thus, the error, if any, was harmless.

Accordingly, the ALJ did not err because substantial evidence supports the limitations that the ALJ both included and declined to include in his hypothetical question and RFC determination. The ALJ's decision demonstrates that he considered and weighed the evidence, properly assessed Plaintiff's RFC, and posed a hypothetical question that incorporated all relevant work-related limitations that were supported by substantial evidence. As discussed above, the ALJ sufficiently discussed Plaintiff's ability to stay on task and explained why an additional limitation addressing her concentration, persistence, or pace was not necessary. Furthermore, the ALJ supports

Plaintiff's mental RFC limitations by discussing her examination findings, her reported daily activities, and the medical opinions of the state agencies and Dr. Karen Marcus. Accordingly, Plaintiff's assignment of error is overruled.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: June 30, 2020

Frank D. Whitney
United States District Judge